1  Catherine E. Lhamon (SBN 192751)
   clhamon@publiccounsel.org
2  Jennifer K. del Castillo (SBN 244816)
   jdelcastillo@publiccounsel.org
3  PUBLIC COUNSEL LAW CENTER
   610 South Ardmore Avenue
4  Los Angeles, California 90005
   T: (213) 385-2977  F: (213) 385-9089
5
6  Neal S. Dudovitz (SBN 68848)
   ndudovitz@nls-la.org
7  Alexander Prieto (SBN 270864)
   AlexanderPrieto@nls-la.org
8  NEIGHBORHOOD LEGAL SERVICES
   OF LOS ANGELES COUNTY
9  13327 Van Nuys Boulevard
   Pacoima, California 91331
10 T: (818) 834-7544
11
12 Attorneys for Plaintiffs
   (*see next page for additional counsel*)
13

14          IN THE UNITED STATES DISTRICT COURT

15            CENTRAL DISTRICT OF CALIFORNIA

16 | THE COMMUNITY ACTION LEAGUE, | Case No.  11-CV-4817-ODW-VBK
17 | a California non-profit organization; *et al.*, | Honorable Otis D. Wright
18 |                              | PLAINTIFFS' OPPOSITION TO
   |              Plaintiffs,     | DEFENDANT CITY OF PALMDALE'S
19 |                              | MOTION TO DISMISS PLAINTIFFS'
   |              vs.             | FIRST AMENDED COMPLAINT
20 |                              |
21 | CITY OF LANCASTER and CITY OF | Hearing Date:  Jan. 9, 2012
22 | PALMDALE,                    | Time:  1:30 PM
   |                              | Courtroom: 11
23 |              Defendants.     |
   |                              | Orig. Compl. Filed:  June 7, 2011
24 |                              | 1st Am. Compl. Filed:  Sept. 28, 2011
25 |                              | Pre-trial Conference:  None Set
   |                              | Trial Date:  None Set
26

27

28

---

PLAINTIFFS' OPP'N TO CITY OF PALMDALE'S MOTION TO DISMISS

Barbara Siegel (SBN 169209)
barbarasiegel@nls-la.org
Maria E. Palomares (SBN 266206)
MariaPalomares@nls-la.org
NEIGHBORHOOD LEGAL
SERVICES
OF LOS ANGELES COUNTY
13327 Van Nuys Boulevard
Pacoima, California 91331
T:  (818) 834-7544

Dorcas R. Gilmore*
dgilmore@naacpnet.org
Victor L. Goode*
vgoode@naacpnet.org
NATIONAL ASSOCIATION FOR
THE ADVANCEMENT OF COLORED
PEOPLE
4805 Mount Hope Drive
Baltimore, MD 21215
T:  (410) 580-5673  F: (410) 358-9350
* admitted *pro hac vice*

Gary L. Blasi (SBN 70190)
blasi@law.ucla.edu
UCLA School Of Law *(for identification purposes only)*
405 Hilgard Avenue
Los Angeles, California 90024
T:  (310) 206-9431  F:  (310) 206-1234

Bill Lann Lee (SBN 108452)
blee@lewisfeinberg.com
Lindsay Nako (SBN 239090)
lnako@lewisfeinberg.com
LEWIS, FEINBERG, LEE, RENAKER,
& JACKSON, P.C.
476 9th Street
Oakland, California 94607
T: (510) 839-6824  F: (510) 839-7839

Michael C. Small (SBN 222768)
MSmall@akingump.com
Kalia C. Petmecky (SBN 194094)
kpetmecky@akingump.com
Amy C. Poyer (SBN 277315)
apoyer@akingump.com
Kelsey Stapler (SBN 277859)
kstapler@akingump.com
AKIN GUMP STRAUSS HAUER &
FELD LLP
2029 Century Park East Suite 2400
Los Angeles, California 90067-3010
T: (310) 229-1000  F: (310) 229-1001

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ II

I. PRELIMINARY STATEMENT ............................................................ 1

II. STATEMENT OF FACTS .................................................................... 4

III. LEGAL STANDARD .......................................................................... 6

IV. PLAINTIFFS HAVE JOINED ALL NECESSARY PARTIES ........................... 7

    A.    The Court Can Accord Complete Relief Among The Existing Parties ........ 7

    B.    There Is No Prejudice To Any Party .............................................. 11

V. PALMDALE IS DIRECTLY AND VICARIOUSLY LIABLE FOR THE ACTIONS OF ITS INVESTIGATOR AND POLICE FORCE ........................... 14

    A.    Palmdale Is Liable for the Acts of Its Agents, Including Its Housing Investigator and Law Enforcement Personnel ............................. 14

    B.    Palmdale Is Directly Liable For Its Discriminatory Actions ...................... 19

VI. PALMDALE'S STATEMENTS ARE EVIDENCE OF INTENT TO DISCRIMINATE ................................................................................. 22

VII. PALMDALE HAS FOLLOWED LANCASTER'S LEAD ................................. 25

VIII. CONCLUSION .................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*Altmann v. Republic of Austria,* 317 F.3d 954 (9th Cir. 2002) ........................................ 11

*Arnold v. International Business Machines,* 637 F.2d 1350 (9th Cir. 1981) ............18-19

*Bogan v. New London Housing Authority,* 366 F. Supp. 861 (D. Conn. 1973) ............. 11

*Cachil Dehe Band of Wintun Indians v. California,* 547 F.3d 962
     (9th Cir. 2008) ...................................................................................... 12, 13

*Cleveland v. Caplaw Enterprises,* 448 F.3d 518 (2d Cir. 2006) .................................... 15

*City of Columbia v. Omni Outdoor Advertising, Inc.,* 499 U.S. 365 (1991) .................. 22

*Committee Concerning Community Improvement v. City of Modesto,* 583 F.3d
     690 (9th Cir. 2009) ............................................................................... 1, 20

*Creek v. Village of Westhaven,* 80 F.3d 186 (7th Cir. 1996) .....................................22-23

*Desert Palace, Inc. v. Costa,* 539 U.S. 90 (2003) .......................................................... 25

*Disabled Rights Action Committee v. Las Vegas Events, Inc.,* 375 F.3d 861
     (9th Cir. 2003) ................................................................. 8-9, 10, 12, 13

*Eldredge v. Carpenters 46 Northern California Counties Joint Apprenticeship &*
     *Training Committee,* 662 F.2d 534 (9th Cir. 1981) ................................ 8

*Federal Deposit Insurance Corp. v. County of Orange (In re County of Orange),*
     262 F.3d 1014 (9th Cir. 2001) ............................................................ 11

*Flores v. Pierce,* 617 F.2d 1386 (9th Cir. 1980) ............................................................ 24

*Franz v. East Columbia Basin Irrigation District,* 383 F.2d 391
     (9th Cir. 1967) ...................................................................................10-11

*Gallagher v. Magner,* 619 F.3d 823 (8th Cir. 2010) ............................................... 20, 24

*Harris v. Itzhaki,* 183 F.3d 1043 (9th Cir. 1999) ..................................................... 14, 15

*Harris v. White,* 479 F. Supp. 996 (D. Mass. 1979) ...................................................... 10

*Hurley v. Horizon Project, Inc.,* No. CV-08-1365-ST, 2009 WL 5511205
     (D. Or. Dec. 3, 2009) ........................................................................... 13

PLAINTIFFS' OPP'N TO CITY OF PALMDALE'S MOTION TO DISMISS

*Inland Mediation Board v. City of Pomona,* 158 F. Supp. 2d 1120
  (C.D. Cal. 2001)..................................................................................14, 15, 16

*Keith v. Volpe*, 858 F.2d 467 (9th Cir. 1988)...................................................20

*King v. Massarweh*, 782 F.2d 825 (9th Cir. 1986) .......................................18-19

*LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412 (2d Cir. 1995)............................19

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000)..................................................7

*Los Angeles Unified School District v. BP America, Inc.,*No. CV 10-1181 PSG
  (PLAx), 2010 WL 1854070 (C.D. Cal. May 6, 2010)  ...........................9

*Magner v. Gallagher*, No. 10-1032, 2011 WL 531692 (Nov. 7, 2011). .........20

*Makah Indian Tribe v. Verity*, 910 F.2d 555 (9th Cir. 1990) .................6, 7, 12

*Manistee Town Center v. City of Glendale*, 227 F.3d 1090 (9th Cir. 2000) ..................22

*McGinest v. GTE Service Corp.*, 360 F.3d 1103 (9th Cir. 2004) ...............24-25

*Meyer v. Holley*, 537 U.S. 280, 285 (2003) ....................................................14

*Michigan Protection & Advocacy Services v. Babin*, 18 F.3d 337 (6th Cir. 1994) ........21

*National Wildlife Federation v. Espy*, 45 F.3d 1337 (9th Cir. 1995) ..............10

*Navarro v. Block,* 250 F.3d 729 (9th Cir. 2001)........................................6, 17

*Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030 (9th Cir. 1983) ..............11

*Regional Economic Community Action Program v. City of Middletown*,
  294 F.3d 35 (2d Cir. 2002) .....................................................................24

*Soberay Machine & Equipment Co. v. MRF Ltd.,* 181 F.3d 759
  (6th Cir. 1999) ................................................................................10-11

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) .............................................6, 7

*Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990)..................................................7

*United Mine Workers v. Pennington*, 381 U.S. 657 (1965).............................23

*United States v. Bowen*, 172 F.3d 682 (9th Cir. 1999) .............................11, 13

*United States v. City of Hayward*, 36 F.3d 832 (9th Cir. 1994) ................21, 22

*United States ex rel. Morongo Band of Mission Indians v. Rose*, 34 F.3d 901
  (9th Cir. 1994) .........................................................................................12

iii

*United States v. Frank*, 956 F.2d 872 (9th Cir. 1992) .......................................20

*Village of Arlington Heights v. Metropolitan Housing Development Corp.*,

      429 U.S. 252 (1977)..........................................................................1, 19, 24, 25

*Walker v. City of Lakewood*, 272 F.3d 1114 (9th Cir. 2001)....................................21, 22

*White v. Lee*, 227 F.3d 1214 (9th Cir. 2000) .......................................................22

*Williams v. Gerber Products Co.*, 552 F.3d 934 (9th Cir. 2008) .................................6-7

**<u>Restatements</u>**

Restatement (3d) of Agency § 1.01 (2006).........................................................15

Restatement (3d) of Agency § 1.02 (2006).........................................................15

Restatement (3d) of Agency § 2.03 (2006).........................................................17

**<u>Rules and Statutes</u>**

Federal Rule of Civil Procedure 12(b)(6) ........................................................6, 7

Federal Rule of Civil Procedure 12(b)(7) ...........................................................6

Federal Rule of Civil Procedure 19(a)(1)(A).....................................................7, 8

Federal Rule of Civil Procedure 19(a)(1)(B)..........................................7, 11, 12, 13

42 U.S.C. § 3617.............................................................................21, 22

PLAINTIFFS' OPP'N TO CITY OF PALMDALE'S MOTION TO DISMISS

## I.   **PRELIMINARY STATEMENT**

In its motion, Palmdale seeks to evade liability for its concerted seven-year campaign of targeted harassment and intimidation, designed to exclude from its borders low-income black and Latino participants in a federal housing choice voucher program ("Section 8") that was specifically designed to integrate communities and offer better lives to poor families.  The City postures itself as a disinterested bystander to racial steering that fair housing laws outlawed more than fifty years ago, but the facts alleged in the First Amended Complaint ("FAC") demonstrate otherwise.  Palmdale's leaders have complained of being "swarm[ed]" by an "inordinate" number of Section 8 participants, and, without further justification, sought to "crack down" and drive them out so that "deserving" individuals could take their place.  Such actions marked Section 8 participants for constant, unwarranted scrutiny, driving some participants to flee the City while others were wrongly deprived of subsidies that stood between their families and homelessness.  Palmdale took these actions fully aware of their necessarily racial impact – eighty-five percent of the City's Section 8 participants are black and Latino, making the group racially identifiable among the rest of the City's residents – and Palmdale has never offered any reasoned basis for targeting this group.  Such conduct is unlawful.   Illegal discrimination exists wherever "a discriminatory purpose is a motivating factor" in a City's actions, *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265-66 (1977), or where those actions have an unjustified disproportionate impact on people of color.   *Comm. Concerning Community Improvement v. City of Modesto*, 583 F.3d 690, 713 (9th Cir. 2009).    Both circumstances are present here.

Among the tools that Palmdale used in its efforts were a City-funded Section 8 housing investigator and local Sheriff's Department personnel who serve as Palmdale's police force.  Despite proudly publicly defending its efforts when first faced with the threat of litigation, Palmdale now moves to dismiss Plaintiffs' FAC by disavowing its relationship with its housing investigator and the City's law enforcement officers.

(Palmdale's Motion to Dismiss ("Mot.") at 5-13.)  In its first challenge to the FAC, Palmdale argues that two Los Angeles County entities, the Housing Authority ("HACoLA") and the Sheriff's Department ("LACSD"), are indispensable parties to this litigation because these County entities, not Palmdale, committed the bad acts identified in the FAC.  (*Id.* at 5-10.)  In its second challenge, Palmdale claims that it is not vicariously or otherwise liable for the bad acts of the housing investigator it funded or the law enforcement officers it paid for and directed.  (*Id.* at 10-13.)  Neither argument supports dismissal of the FAC.

Both of Palmdale's arguments are rooted in the false premise that Palmdale was a mere witness to HACoLA and LACSD's interactions with Section 8 participants. Nothing could be further from the truth.  As laid out in the FAC, beginning in 2005, Palmdale asked HACoLA to hire a Section 8 investigator who would work exclusively within the City – in exchange, Palmdale would pay half of the investigator's salary.  The FAC unequivocally demonstrates that Palmdale directed unlawful exclusionary action by the investigator it paid for.  With each passing year, Palmdale paid for more and more hours of investigator time, and in return received monthly reports from HACoLA on the number of Section 8 investigations and terminations Palmdale's investigator initiated, as well as reports directly from the investigator detailing how he used the time Palmdale paid for.  As those reports demonstrated, the investigator's activities regularly involved local Sheriff's Department personnel.  Palmdale contracts with LACSD to provide the City's law enforcement personnel – these officers serve as the municipal police force and their activities are directed by the City.

Thus, Palmdale's claim that either HACoLA or LACSD are indispensable parties to this litigation is meritless.  (*See* Section IV, *infra*.)  The Court can accord meaningful relief between Palmdale and the plaintiffs by barring Palmdale from entering into future agreements with HACoLA and from issuing future directives to Sheriff's Department personnel that result in discrimination against Section 8 participants.  HACoLA and LACSD have no legally cognizable interest in whether Palmdale continues to use their

2

personnel to target Section 8 participants for surveillance and harassment.

Likewise, Palmdale's contention that it is liable for none of the actions of the housing investigator or Sheriff's Department personnel ignores Plaintiffs' allegations. (*See* Section V, *infra*.)  As alleged in the FAC, Palmdale's housing investigator and law enforcement officers were acting as agents of the City.   Palmdale directed and controlled the deployment of local law enforcement, and dictated and ratified the actions of its housing investigator.  Moreover, even if Palmdale were not vicariously liable for the bad acts of its agents, it is directly liable for making the decision to target Section 8 participants in the first place, as this decision was made with the unlawful purpose of driving Section 8 participants out of Palmdale and had the desired, unjustified result.

In its third challenge to the FAC, Palmdale argues that statements made by its City Council members cannot serve as a basis for liability because they are protected by the First Amendment and the Noerr-Pennington doctrine. (Mot. at 13-19.)  Palmdale is correct that such statements, standing alone, would not support a claim.   However, Palmdale's City Council did not simply speak – it acted.   Statements by Palmdale's officials purporting to justify the City's actions support Plaintiffs' assertion that Palmdale had no legitimate basis for targeting Section 8 participants and instead was motivated by unlawful purposes.  The First Amendment and Noerr-Pennington do not bar Plaintiffs from using City officials' statements to show discriminatory intent.  (*See* Section VI, *infra*.)  Similarly, Palmdale asserts that Lancaster's conduct is irrelevant to the claims against Palmdale.   Again, while Palmdale is not liable for Lancaster's actions, Palmdale modeled its *own* actions on Lancaster's plainly discriminatory conduct.  This, again, is evidence of unlawful intent.  (*See* Section VII, *infra.*)

The FAC is more than sufficient to state claims against Palmdale for its direct and vicarious liability for its intentional discriminatory conduct against, and for its unjustified discriminatory effect on, the overwhelmingly black and Latino low income Palmdale residents who participate in the Section 8 program, and whom Palmdale dismissed and disregarded as a scourge rather than welcoming.  This Court should reject

PLAINTIFFS' OPP'N TO CITY OF PALMDALE'S MOTION TO DISMISS

1  Palmdale's effort to evade review through its motion to dismiss just as the Court should
2  reject Palmdale's outdated prejudices and unlawful discrimination.

3  ## II.    STATEMENT OF FACTS

4         The Section 8 program is a federal program established by the U.S. Department
5  of Housing and Urban Development ("HUD") that provides rental subsidies for low
6  income families and individuals.  (FAC ¶ 2.)  In Los Angeles County, it is administered
7  by HACoLA.  (*Id.* ¶ 3.)  In order to qualify for a voucher in 2010, a family of four had
8  to have an income of less than $41,400, and many earned substantially less.  (*Id.* ¶ 4.)
9  Participants undergo rigorous criminal background checks before a voucher is issued.
10 (*Id.*)  Many Section 8 participants are single mothers who are drawn to cities like
11 Palmdale in order to give their children better homes and better educational
12 opportunities.  (*Id.* ¶ 80, 89.)  A Section 8 voucher that would provide for only a small
13 apartment elsewhere will pay rent for a single family home in the Antelope Valley.  (*Id.*
14 ¶ 5.)   As a result, roughly 1,500 Section 8 participants and their families live in
15 Palmdale.  (*Id.* ¶ 28.)  Eighty-five percent are black and Latino.  (*Id.* ¶¶ 4, 6.)

16        In late 2004 and early 2005, meetings among Lancaster, Palmdale, and HACoLA
17 resulted in an MOU among Palmdale, HACoLA, and Los Angeles County to hire an
18 additional housing investigator to work with the local Sheriff's office and focus on
19 eliminating purported Section 8 fraud.  (*Id.* ¶ 36.)  Palmdale contracts with LACSD for
20 its municipal law enforcement, which provides personnel to serve as Palmdale's police
21 force at the direction of the City and which includes, at the City's request, a special
22 team devoted to policing rental housing called "Partners against Crime" or "PAC."  (*Id.*
23 ¶¶ 28, 35.)  Palmdale entered into its first MOU in February 2005, noting in its staff
24 report that Lancaster had already done so.  (*Id.* ¶ 37.)[1]  Palmdale renewed its MOUs
25 every year thereafter, regularly increasing the number of hours of investigative services
26 it paid for.  (*Id.* ¶ 38.)  During City Council meetings concerning these renewals,

27
28
---
[1]  Palmdale has requested judicial notice of its MOUs with HACoLA, as well as its contracts with
LACSD.  (Palmdale's Req. for Jud. Notice ("RJN").)  Plaintiffs do not oppose Palmdale's RJN.

PLAINTIFFS' OPP'N TO CITY OF PALMDALE'S MOTION TO DISMISS

Palmdale's leaders explained that they fear a "swarm" of Section 8 participants (*id.* ¶ 7), that the City needs to "crack down" on rampant fraud among current Section 8 participants to make way for "legitimately" "deserving" individuals (*id.* ¶¶ 11,15), and that Palmdale has an "inordinate amount of Section 8 in [their] community" (*id.* ¶ 38).

These efforts have resulted in the investigation and termination of Section 8 recipients in Palmdale at a rate that is disproportionate to the rest of the County. (*Id.* ¶¶ 9, 43-46.)  For example, between July 2008 and June 2009, one in 12 Palmdale Section 8 participants had their vouchers terminated for purported program violations – in the rest of the HACoLA's jurisdiction, the rate was one in 115.  (*Id.* ¶ 44.)  Between 2006 and 2010, the odds that a Section 8 participant would be subjected to an investigation were approximately 3.2 times higher in Palmdale than in the rest of the County.  (*Id.* ¶ 43.)  Palmdale's dedicated investigator drove this trend.  While other housing investigators opened investigations based largely on calls to HACoLA's fraud hotline, Palmdale's investigator opened numerous investigations of tenants about whom no calls had been received.  (*Id.* ¶ 45.)  Moreover, Palmdale's investigator collaborated with Sheriff's Department personnel far more frequently than HACoLA's other investigators – for example, during the first nine months of 2010, deputies accompanied investigators on approximately 71% of their visits to homes in Palmdale, while in the rest of the County, law enforcement participated only 8% of the time. (*Id.* ¶¶ 43, 46.)

Palmdale was aware of much of this disparity.  Since entering into the MOUs, Palmdale has received monthly reports from HACoLA identifying the number of Section 8 participants in Palmdale, the number of investigations opened by Palmdale's investigator, and the results of those investigations, including the number of Section 8 participants whose vouchers were terminated.   (*Id.* ¶¶ 44-45.)   These reports demonstrated a wide gap between the treatment of Section 8 participants living in Palmdale and those living in the rest of the County.  (*Id.* ¶¶ 44-45, 48.)  Palmdale has also received monthly reports from its investigators themselves, detailing how they spent their time and identifying "noteworthy" incidents.  (*Id.* ¶ 43.)  These reports

PLAINTIFFS' OPP'N TO CITY OF PALMDALE'S MOTION TO DISMISS

indicated that Palmdale's Section 8 investigators worked closely with local Sheriff's Department personnel and had unfettered access to Sheriff's Department records. (*Id.* ¶¶ 41-43.) Palmdale has lauded its most recent Section 8 investigator's "unmatched" "productivity" (as measured in the monthly reports of investigations and terminations) and characterized his work as "incredible." (*Id.* ¶ 43.)

In addition to making use of its Section 8 investigator and police force, Palmdale has found other means to target Section 8 participants – many of them inspired by Lancaster. For example, in March 2009, the Cities held a joint meeting with HACoLA at which Palmdale arranged for HACoLA to send threatening letters to Palmdale's Section 8 landlords (as HACoLA had done for Lancaster), and devised a plan to obtain lists of Section 8 participants. (*Id.* ¶¶ 52-53.) At the same meeting, Palmdale sought to have HACoLA produce an ad campaign to dissuade Section 8 participants from moving to the Antelope Valley. (*Id.* ¶ 9b.) Palmdale officials have also used the City's rental inspection ordinances as a pretext to enter Section 8 residences and further harass tenants. (*Id.* ¶ 54.) Finally, the City sought to participate in orientation sessions for new Section 8 voucher holders specifically in order to intimidate tenants. (*Id.* ¶ 65.)

## III.   <u>LEGAL STANDARD</u>

Palmdale moved to dismiss the FAC under Rules 12(b)(7) and 12(b)(6). A Rule 12(b)(7) motion will be granted only where the moving party has shown that an absent party is not only "necessary" but "indispensible," and where joinder is not possible. *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990). "A Rule 12(b)(6) motion tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Factual allegations that do more than merely recite the elements of a claim "are accepted as true, as well as all reasonable inferences to be drawn from them." *Id.* In order to state a claim, those allegations "must plausibly suggest an entitlement to relief." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). "The motion to dismiss is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case." *Williams v. Gerber Prods. Co.*, 552 F.3d 934,

6

938 (9th Cir. 2008) (internal quotations and citations omitted).  Indeed, "if there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)."  *Starr*, 652 F.3d at 1216.[2]

## IV.  PLAINTIFFS HAVE JOINED ALL NECESSARY PARTIES

Contrary to Palmdale's arguments, neither HACoLA nor LACSD is a necessary party to this action because the Court can "accord complete relief among existing parties" in their absence, F.R.C.P. 19(a)(1)(A); and because neither HACoLA nor LACSD "claims an interest relating to the subject of the action," and there is no risk that any existing party will be subject "double, multiple, or otherwise inconsistent obligations" if the case proceeds without them.  F.R.C.P. 19(a)(1)(B).  As the moving party, Palmdale has the burden of showing that the absent parties are necessary, *see Makah Indian Tribe*, 910 F.2d at 558, and the City has failed to meet this burden.  In essence, Palmdale's argument is that absent parties – HACoLA and LACSD – were joint tortfeasors in the alleged discrimination and should be part of the suit.  However, it is well established that joint tortfeasors are not necessary parties under Rule 19.  *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990).  The Court can afford complete relief as to the parties before it, and no party is prejudiced by HACoLA or LACSD's absence.[3]

### A.  The Court Can Accord Complete Relief Among The Existing Parties

Palmdale's complete relief analysis ignores both law and facts.  Under Rule 19(a)(1)(A), a party is deemed "necessary" if "the court cannot accord complete relief among existing parties" in its absence.  The "'complete relief' analysis is concerned

---

[2]  Even in the event of dismissal, leave to amend should be granted unless "the pleading could not possibly be cured."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotations and citations omitted).

[3]  In any event, as Palmdale and the Court are aware, Plaintiffs have been engaged in settlement discussions with the County of Los Angeles, including HACoLA and LACSD, which have resulted in two consecutive moratoriums on further MOUs with Palmdale.  Should these discussions fail to reach a resolution, Plaintiffs have every intention of naming these entities as defendants.  (*See* Notice Of Withdrawal Of Mot. For Leave To Proceed Anonymously filed Aug. 29, 2011 (Dkt 29); *Ex Parte* Appl. For Order Setting Dates For Am. Compl. and Response filed Aug. 29, 2011 (Dkt 30).)

7

only with relief as between the persons already parties, not as between a party and the absent person whose joinder is sought." *Eldredge v. Carpenters 46 N. Cal. Counties Joint Apprenticeship & Training Comm.*, 662 F.2d 534, 537 (9th Cir. 1981) (citation and internal quotations omitted); *accord Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 879 (9th Cir. 2004). ("In conducting the Rule 19(a)(1) analysis, the court asks whether the absence of the party would preclude the district court from fashioning meaningful relief as between the parties." (citation omitted)). In addressing the "complete relief" prong of Rule 19, Palmdale focuses entirely on relief that purportedly could be obtained against HACoLA and LACSD if they were parties. (*See* Mot. at 6-8.) In doing so, Palmdale completely misconstrues the nature of the "complete relief" analysis. Simply put, the only question is whether the court can accord meaningful relief between Palmdale and Plaintiffs, and the potential availability of some different relief between Plaintiffs and the absent County entities is irrelevant.

The Ninth Circuit's decision in *Disabled Rights Action Committee v. Las Vegas Events, Inc.* illustrates this principle. There, the plaintiff, an advocacy organization for people with disabilities, sued two private entities ("Events" and "Cowboys") responsible for an annual rodeo competition, alleging that the stadium in which the rodeo was held was not accessible to disabled individuals. 375 F.3d at 865-66. The stadium was owned by the University of Nevada, Las Vegas ("UNLV"), which granted a license to hold the rodeo there. *Id.* at 866. The plaintiff sought to enjoin the private entities from discriminating on the basis of disability, but did not name UNLV. *Id.* at 879. The district court ordered the plaintiff to join UNLV, on the grounds that "enforcement of any judgment awarding relief would require the cooperation of UNLV, as the owner and operator of the [stadium]." *Id.* at 867. The Ninth Circuit, however, rejected this conclusion, finding that "the district court entirely failed to consider whether remedies not requiring [UNLV's] cooperation would provide meaningful relief." *Id.* at 879.

The Ninth Circuit's complete relief analysis focused on the existing defendants' ability to take steps to remedy the discrimination. *See id.* at 879-80. The court

8

explained that although the defendants did not have absolute control over the stadium's structure, "complete relief" was nonetheless available because they could meaningfully remedy the discrimination by taking actions that were within their control:

> Meaningful relief could ... be granted by enjoining Events and Cowboys from making certain kinds of operational decisions regarding conditions over which they have control – e.g., enjoining them from removing accessible floor seating, or requiring the erection of temporary ramps or lifts.  Meaningful relief could also be granted by requiring Events and Cowboys to hold the Rodeo at an accessible venue either immediately, or in the future, after the current provisions of its licensing agreement expire. These forms of relief, which are neither hollow nor meaningless, would be available with or without [UNLV's] participation.

*Id.* at 880.

The same principle applies here.  Although Plaintiffs reserve the right to seek such relief elsewhere, the operative FAC does not seek injunctive relief enjoining HACoLA or LACSD, nor does it seek relief that cannot be accomplished without their cooperation.  Rather, complete relief in this case means injunctive relief requiring Palmdale to remedy the discriminatory practices identified in the FAC to the extent those practices are within Palmdale's control.  *See id.* at 879-80; *see also, e.g., Los Angeles Unified Sch. Dist. v. BP Am., Inc.*, No. CV 10-1181 PSG (PLAx), 2010 WL 1854070 at *3 (C.D. Cal. May 6, 2010) (rejecting defendants' argument that complete relief could not be accorded in case involving environmental contamination of school site due to threat of continued contamination from absent parties' facilities, because "the injunctive relief Plaintiff seeks would require Defendants to address the contamination issuing from their own facilities or property" and not facilities outside their control). There are several steps that Palmdale could take that would be neither hollow nor meaningless.

As discussed below in Section V.A, Palmdale exercised control over its housing

investigator until the County placed a moratorium on its MOU with Palmdale and continues to exercise control over its local Sheriff's Department personnel, and can direct these officers to end their discriminatory practices.   Moreover, the housing investigator's and law enforcement actions targeting Section 8 participants occur only with the funding and support of the City.  Just as the defendants in *Disabled Rights* had the ability to hold their rodeo at a location other than the UNLV stadium, Palmdale has the ability not to enter into future MOUs with HACoLA or otherwise fund special housing investigators dedicated solely to the City's small Section 8 population. Similarly, the City has the ability to eliminate the PAC program it created to target rental housing and Section 8, and to not create similar programs focusing scrutiny on Section 8 participants in the future.  Finally, the City has the ability to destroy all lists and other information it has obtained identifying Section 8 participants and landlords, to not rely on such information to target Section 8 participants or their landlords, and generally to cease targeting Section 8 participants and landlords for harassment.  None of these steps would require the participation of HACoLA or LACSD.  Taken together, they would constitute meaningful, complete relief between the existing parties as to Palmdale's discriminatory acts. In contrast, Palmdale cites inapposite cases in which complete relief could *not* be obtained against the existing defendant.  (*See* Mot. at 7.) [4]

---

[4]   *National Wildlife Federation v. Espy* and *Harris v. White* both involved parties who were necessary because the specific injunctive relief the plaintiffs sought could not be effectively implemented unless those parties were bound by the court's judgment.  *See Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1344 (9th Cir. 1995) (noting that environmental easements plaintiffs sought would not be effective if the owners of the protected wetlands were not bound and could continue their practice of grazing cattle on the wetlands); *Harris v. White*, 479 F. Supp. 996, 1011 (D. Mass. 1979) (noting that a court order altering the Boston Public Works Department's allegedly discriminatory hiring system would not be effective if the Massachusetts Civil Service Commission were not a party, because the Department could not change the hiring system on its own without the Civil Service Commission's cooperation). Here, in contrast to the plaintiffs in *National Wildlife Federation* and *Harris* and like the plaintiff in *Disabled Rights*, the plaintiffs seek injunctive relief directing Palmdale to take steps that are entirely within the City's control, in order to remedy its own discriminatory conduct.  Palmdale's apparent reliance on *Franz v. East Columbia Basin Irrigation District* and *Soberay Machine & Equipment Company v. MRF Limited* to suggest that HACoLA's and LACSD's contracts with Palmdale make them necessary parties is even more inapt.  Unlike *Franz* and *Soberay*, this action is not based on those contracts, does not involve a challenge to any of them, and will not have any impact on the County

10

### B. <u>There Is No Prejudice To Any Party</u>

Much like Palmdale's complete relief analysis, its prejudice argument is fatally flawed.  Joinder under Rule 19(a)(1)(B) "is 'contingent ... upon an initial requirement that the absent party *claim* a legally protected interest relating to the subject matter of the action.'"  *See United States v. Bowen*, 172 F.3d 682, 689 (9th Cir. 1999) (quoting *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043 (9th Cir. 1983)) (emphasis added in *Bowen*).  Accordingly, where an absent party is aware of an existing action and chooses not to claim an interest in it, the absent party is not a necessary party to the action and is not deemed prejudiced.  *See FDIC v. County of Orange (In re County of Orange)*, 262 F.3d 1014, 1023 (9th Cir. 2001) ("[The defendant] cannot claim that the [absent parties] have a legally-protected interest in the action unless the [absent parties] themselves claim that they have such an interest."); *Altmann v. Republic of Aus.*, 317 F.3d 954, 971 (9th Cir. 2002) ("Where a party is aware of an action and chooses not to claim an interest, the district court does not err by holding that joinder [is] 'unnecessary.'") (citing *Bowen*, 172 F.3d at 689); *Northrop Corp.*, 705 F.2d at 1043-44 (holding that government was not a necessary party in part because it "never asserted a formal interest in either the subject matter of this action or the action itself" and "meticulously observed a neutral and disinterested posture").

Here, as Palmdale is aware, and as the record in the case demonstrates, HACoLA and LACSD are well informed of the nature and existence of this action against the

---

entities' contractual rights.  *See Franz v. E. Columbia Basin Irrigation Dist.*, 383 F.2d  391, 392 (9th Cir. 1967) (United States was necessary to party to action challenging City's approval of amendment to repayment contract with United States); *Soberay Mach. & Equip. Co. v. MRF Ltd*, 181 F.3d 759, 762-64, 768 (6th Cir. 1999) (supplier of machine was necessary party to action brought by manufacturer of machine to recover payment from final purchaser of machine, where action was based on contract between manufacturer and supplier).  Finally, *Bogan v. New London Housing Authority* provides even less support for Palmdale's position.  The brief necessary parties analysis in that case was based entirely on the principle that a state officer charged with enforcing a statute is a necessary party to an action seeking a declaratory judgment that the statute violates the plaintiff's constitutional rights.  *See Bogan v. New London Hous. Auth.*, 366 F. Supp. 861, 865 (D. Conn. 1973).  As this case does not involve a constitutional challenge to a statute, this principle has no application here.

PLAINTIFFS' OPP'N TO CITY OF PALMDALE'S MOTION TO DISMISS

Cities of Lancaster and Palmdale.  (*See* Notice Of Withdrawal Of Mot. For Leave To Proceed Anonymously filed Aug. 29, 2011 (Dkt 29); Decl. of Asst. County Counsel Roger Granbo (Dkt 29-1); *Ex Parte* Appl. For Order Setting Dates For Am. Compl. and Response filed Aug. 29, 2011 (Dkt 30).)  Neither entity has attempted to join the case or otherwise claimed an interest in it.  Under the circumstances, it is inappropriate and disingenuous for Palmdale to invoke these entities' alleged "interests" in an action between Plaintiffs and the Cities when seeking to compel their joinder under Rule 19. *See United States ex rel. Morongo Band of Mission Indians v. Rose*, 34 F.3d 901, 908 (9th Cir. 1994) (finding it "inappropriate" for defendant seeking joinder to "to attempt to champion an absent party's interests" where the absent party "did not feel that it was necessarily in his interest to remain a party in [the] action," and noting that absent party's stance was "the best evidence that [his] absence would not impair or impede his ability to protect his interests").

Moreover, as Palmdale acknowledges, Rule 19(a)(1)(B) applies only where "the absent party has a legally protected interest in the suit."  *See Makah Indian Tribe*, 910 F.2d at 558; *see also Cachil Dehe Band of Wintun Indians v. California*, 547 F.3d 962, 970 (9th Cir. 2008), *Disabled Rights*, 375 F.3d at 880-81.  A "financial stake in the outcome of the litigation" is insufficient.  *Disabled Rights*, 375 F.3d at 883 (citing *Makah Indian Tribe*, 910 F.2d at 558); *see also Cachil Dehe Band*, 910 F.2d at 970. HACoLA and LACSD have no legally cognizable interest in whether Palmdale continues to target Section 8 participants and landlords for surveillance and harassment. As to HACoLA, the Housing Authority has no current MOU with Palmdale.  (*See* RJN Exh. 7 (extending duration of MOU to June 30, 2011).)  It dedicated a special housing investigator to Palmdale's small Section 8 population only because the City paid it to do so, pursuant to prior MOUs.  (FAC ¶¶ 36, 38.)  Any interest HACoLA may have in whether Palmdale pays it in the future to dedicate an investigator to the City in the future is strictly financial and thus insufficient.

Similarly, LACSD has no legally protected interest in the particular choices

Palmdale makes regarding allocation of its Sheriff's staff.   As explained in detail below in Section V.A, Palmdale has control over the type of services performed by the City's Sheriff's Department staff pursuant to its contract with LACSD, and has chosen to dedicate part of that staff to rental housing and Section 8 participants. (*See* FAC ¶¶ 28, 35.)  LACSD has no interest in whether the City continues to do so in the future.  While Palmdale has a current agreement with LACSD, the outcome of this action will have no impact on the validity of that contract or LACSD's rights under it.  Plaintiffs do not allege that the contract is illegal or otherwise challenge its validity, as no term of the contract requires Sheriff's staff to target Section 8 participants for harassment.  *See Disabled Rights*, 375 F.3d at 881-82 (concluding that stadium owner was not a necessary party where contract between owner and rodeo operator would not be invalidated by judgment requiring rodeo operator to accommodate disabled persons).

Finally, although the Court need not consider subsection (ii) of Rule 19(a)(1)(B) because the threshold requirement that HACoLA and LACSD claim an interest in the action is not met, *see Bowen*, 172 F.3d at 689, it bears noting that there is no risk that Palmdale will incur inconsistent obligations in the County entities' absence.  Inconsistent obligations within the meaning of Rule 19 only "occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident."  *Cachil Dehe Band*, 547 F.2d at 976 (quotation omitted).  Palmdale makes no effort to identify any risk that it will be subject to inconsistent obligations of this kind if the case proceeds without HACoLA and LACSD, and there is no such risk.  As such, Palmdale has failed to meet its burden to demonstrate that either LACSD or HACoLA are indispensible to this litigation.[5]

---

[5]  Palmdale is free to subpoena County witnesses and offer evidence in support of its position that HACoLA and LACSD were solely responsible for the discriminatory activities identified in the FAC.  Considering the City's position, it is difficult to envision any prejudice to Palmdale if HACoLA and LACSD remain non-parties and are not present to defend themselves.  *See Hurley v. Horizon Project, Inc.*, No. CV-08-1365-ST, 2009 WL 5511205 at *8 (D. Or. Dec. 3, 2009) ("The county defendants remain free to contend that [plaintiff's] injuries were caused by the State's actions.  They may subpoena state witnesses and offer evidence in support of their arguments.  Because the State will not

13

1
2
## V.  PALMDALE IS DIRECTLY AND VICARIOUSLY LIABLE FOR THE ACTIONS OF ITS INVESTIGATOR AND POLICE FORCE

3
4
5
6
7
8
9
10
11
12
13
14
15
16
In its second attack on the FAC, Palmdale argues that the FAC should be dismissed because Palmdale cannot be held vicariously liable for the actions of the housing investigator it hired to target Section 8 participants exclusively within its borders or the Sheriff's deputies it directed to focus attention on Section 8 tenants. (*See* Mot. at 10-13.)  However, as Palmdale acknowledges, the Fair Housing Act allows liability under a theory of vicarious liability or respondeat superior.  *See Meyer v. Holley*, 537 U.S. 280, 285 (2003).  Based on the facts set forth in the FAC, Palmdale is vicariously liable for the actions of its investigator and its Sheriff's Department personnel.  Further, Palmdale's liability for discrimination against black and Latino Section 8 participants is not based solely on a vicarious liability theory.  Even if it were not vicariously liable, Palmdale is directly liable for taking actions targeting black and Latino Section 8 participants based on racial animus, which also have an unjustified disproportionate impact on black and Latino residents.  Thus, Palmdale's arguments provide no grounds for dismissal.

17
18
### A. Palmdale Is Liable for the Acts of Its Agents, Including Its Housing Investigator and Law Enforcement Personnel

19
20
21
22
23
24
25
26
"The question whether an agency relationship exists for purposes of the Fair Housing Act is determined under federal law" in order to "avoid predicating liability for Fair Housing Act violations on the vagaries of state law."  *Harris v. Itzhaki*, 183 F.3d 1043, 1054 (9th Cir. 1999); *accord Inland Mediation Bd. v. City of Pomona*, 158 F. Supp. 2d 1120, 1139 (C.D. Cal. 2001).  Under federal law, general agency principles govern the application of vicarious liability.  *Meyer*, 537 U.S. at 285-86.  Courts have therefore looked to the Restatement of Agency for guidance.  *See, e.g., Inland Mediation Bd.*, 158 F. Supp. 2d at 1139.

27
28
---
be present to defend itself, it is difficult to understand how its absence will prejudice the county defendants.").

14

According to the Restatement, agency "arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act."  Rest. (3d) of Agency § 1.01 (2006).  The circumstances in which an agency relationship exists for purposes of the Fair Housing Act are not limited to "the typical owner-agent or owner-co-owner relationships."  *See Inland Mediation Bd.*, 158 F. Supp. 2d at 1140 n.12.  Rather, an agency relationship exists whenever the agent is "*in some way* authorized to act on the principal's behalf."  *See id.* (emphasis in original). Determining whether an agent is authorized to act on behalf of a principal therefore requires a "highly factual" inquiry.  *See, e.g., Cleveland v. Caplaw Enters.*, 448 F.3d 518, 523 (2d Cir. 2006) (citing relevant factors including "the situation of the parties, their relations to one another, and the business in which they are engaged" and "the nature of the subject matters and the circumstances under which the business is done"). Mere contractual language is ***not*** determinative. "Slavish deference to contractual language is inappropriate in the highly-factual and often nuanced agency analysis."  *Id.*; *see also* Rest. (3d) of Agency § 1.02 ("Whether a relationship is characterized as agency in an agreement between parties … is not controlling.").  Indeed, plaintiffs should be permitted to proceed under an agency theory "unless the factual record is utterly devoid of support for a finding of agency."  *Inland Mediation Board*, 158 F. Supp. 2d. at 1139 (citing *Harris*, 183 F.3d at 1054).

Thus, while Palmdale cites to its contracts with HACoLA and LACSD to argue that it does not have the ability to control its housing investigator or Sheriff's Department personnel, the City cannot rely on contractual language alone to claim a lack of agency.  *See Cleveland*, 448 F.3d at 522-23 (noting with approval that courts have been "reluctan[t] ... to rely upon conclusory contractual language to dismiss a fair housing claim for lack of agency").  As detailed below, the FAC contains numerous factual allegations regarding the relationship between Palmdale and its housing investigator and Sheriff's Department personnel which indicate direction and control by

15

the City.  Further, as to the Sheriff's Department personnel, the contracts upon which Palmdale relies contradict the City's assertion that it has no control over their actions.

As background to the parties' relationship, the fact that Palmdale has taken an intense interest in Section 8 compliance checks and their outcomes (*see* FAC ¶ 11), supports the existence of an agency relationship between Palmdale and its investigator and Sheriff's Department staff.  *See Inland Mediation Board*, 158 F. Supp. 2d at 1140 (citing city's "special interest" in the activities of local landlords' organization as evidence of agency relationship between city and director of organization).  The City is engaged in a campaign to reduce the number of Section 8 participants residing within its borders, and the City's housing investigator and Sheriff's Department personnel have acted together as its agents in this campaign.

As part of its campaign against Section 8 participants, Palmdale paid for a special housing investigator dedicated exclusively to the City and regularly increased his hours and funding with knowledge of his illegal and aggressive actions against Section 8 tenants.  (FAC ¶¶ 37-38.)  The data set forth in the FAC illustrate that the various investigators hired to serve Palmdale since 2005 have conducted themselves differently from HACoLA's regular housing investigators in the rest of its jurisdiction and acted with different goals.  Palmdale's investigators opened investigations and proposed termination of Section 8 assistance at a rate far higher than HACoLA's regular housing investigators, often recommending terminations that were patently unwarranted.  (*Id.* ¶¶ 43-44, 46-47.)  As alleged in the FAC, "approximately 1 in 12 Palmdale Section 8 tenants ... had their vouchers terminated for purported fraud or some other program violation" between July 2008 and June 2009; "[i]n the rest of HACoLA's jurisdiction, the rate during the same period was roughly 1 in 115."  (*Id.* ¶ 44.)  Between 2006 and 2010, "the odds that a Section 8 participant would be subjected to an investigation were … approximately 3.2 times higher in Palmdale than in the rest of [the] County."  (*Id.* ¶ 43.)  Palmdale's investigators were also accompanied by Sheriff's deputies on their compliance checks far more frequently than HACoLA's regular investigators – during

16

the first nine months of 2010, "Sheriff's deputies accompanied investigators on approximately 71% of their visits to homes in Palmdale … while in the rest of the County, law enforcement participated only 8% of the time." (*Id.*)  Further, while regular housing investigators opened investigations based largely on calls to HACoLA's fraud hotline, Palmdale's investigators opened numerous investigations of tenants about whom no calls had been received.  (*Id.* ¶ 45.)  Palmdale's Motion completely ignores these allegations and the obvious inferences they support, which must be taken as true. *See Navarro*, 250 F.3d at 732.  These facts indicate that instead of acting to prevent fraud against HACoLA like the Housing Authority's regular investigators, Palmdale's investigators acted in furtherance of Palmdale's goal of eliminating Section 8 households from the City.  This difference supports the conclusion that Palmdale directed and controlled its investigators' activities, and that they acted on the City's behalf with its consent.

Consistent with this direction and control, the Palmdale City Council met with the City's most recent investigator and evaluated his work.  (*Id.* ¶ 43.)  Palmdale officials also received monthly "Antelope Valley Section 8 Activity Reports" from HACoLA reporting the results of their investigator's activities.  (*Id.* ¶¶ 44, 53.)  These reports compared the number of investigations and terminations in the City with data from other parts of HACoLA's jurisdiction, thus illustrating the different approach taken by Palmdale's investigator.  (*Id.* ¶ 44.)  Palmdale's investigators also personally submitted monthly reports to the City, which described how they spent their time and summarized "noteworthy" incidents.  (*Id.* ¶ 43.)  All of these facts support the inference that Palmdale both supervised and ratified their investigators' actions as agents of the City.[6]

---

[6]  Such acts of ratification also support an apparent agency theory of liability.  Apparent agency exists "when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations."  Rest. (3d) of Agency § 2.03.  Palmdale officials manifested an intent to target Section 8 participants (*see* FAC ¶¶ 7-8, 38), and, as noted, the City's investigator and Sheriff's staff conducted themselves in a manner that would lead Section 8 participants to believe that they were acting on the City's behalf in carrying out this intent.

PLAINTIFFS' OPP'N TO CITY OF PALMDALE'S MOTION TO DISMISS

To further implement its campaign against Section 8 residents, Palmdale created the PAC team, a special program involving the City's Sheriff's Department personnel, designed to target rental housing and Section 8.  (*Id.* ¶ 35.)  As indicated in the contracts Palmdale cites, Palmdale's Sheriff's staff are subject to the control of both the County and the City.  Under the current contract between Palmdale and LACSD, the Sheriff or his designee "performs the function of the Chief of Police *at the direction of the City*." (Palmdale's RJN Exh. 11, ¶ 2.1 (Dkt 38-11) (emphasis added).)  The City participates in determining the "extent of the duties and functions" and "manner of performance" of the Sheriff's Department personnel.  (*Id.* ¶ 2.3.)  The City also determines what types of services are performed and the number of officers deployed.  (*Id.* ¶ 3.0.)  Sheriff's Department personnel are deemed officers or employees of the City.  (*Id.* ¶ 2.6.)  The terms of Palmdale's previous contract with LACSD were materially the same as its current contract.  (*See* Palmdale's RJN Ex. 9 (Dkt 38-9).)

Consistent with the control granted the City in the contracts, Palmdale assigned two sergeants and ten deputies to the PAC program targeting rental units.  (FAC ¶ 35.) The PAC unit and other Sheriff's deputies worked in close collaboration with Palmdale's investigator during his compliance checks and investigations of Section 8 households – indeed, Sheriff's deputies provided the City's investigator with "unlimited access to Sheriff's department records" and prompted him to open investigations of Section 8 tenants.  (*Id.* ¶¶ 41, 45.)  These facts indicate that Sheriff's Department personnel were acting in conjunction with Palmdale's investigator in its campaign against Section 8 residents.  Thus, Plaintiffs have provided sufficient facts at the pleading stage to establish that Palmdale's investigator and Sheriff's Department personnel were acting as the City's agents under the Restatement standard.

*King v. Massarweh* and *Arnold v. IBM*, on which Palmdale entirely relies, are inapposite to the vicarious liability analysis in this case.  Neither case addressed general agency principles or the vicarious liability of a public entity.  The issue in both cases was whether, for purposes of direct liability under civil rights statutes, the arrest and

PLAINTIFFS' OPP'N TO CITY OF PALMDALE'S MOTION TO DISMISS

1   search of the plaintiff by law enforcement officers was proximately caused by the
2   actions of a private defendant.  *See King v. Massarweh*, 782 F.2d 825, 828-29 (9th Cir.
3   1986); *Arnold v. IBM*, 637 F.2d 1350, 1356-57 (9th Cir. 1981).  In both cases, the court
4   concluded that the private defendant did not proximately cause the law enforcement
5   actions because there were no facts showing that the private defendant exerted any
6   control over the law enforcement officers' decision making.  *See id*.  The issue here is
7   the vicarious liability of a public entity – the City of Palmdale – for the actions of a
8   housing investigator and Sheriff's Department personnel who operate within its borders,
9   with its funding, and at its direction.  As explained above, the facts set forth in the FAC,
10  unlike the facts in *King* and *Arnold*, indicate that these individuals acted subject to the
11  City's direction and control.  Thus, the Ninth Circuit's ruling in *King* and *Arnold* are
12  irrelevant to the Court's analysis here.  By contrast, the facts pleaded in the FAC are
13  more than sufficient to satisfy the analysis that is controlling.

    **B. <u>Palmdale Is Directly Liable For Its Discriminatory Actions</u>**

15      In moving to dismiss on this issue, Palmdale's Motion appears to assume that
16  Plaintiffs rely solely on a theory of vicarious liability to hold the City liable for its
17  discrimination against black and Latino Section 8 participants.  (*See* Mot. at 10-13.)
18  Palmdale is again wrong.  Because Palmdale made the decision to target Section 8 based
19  on animus against black and Latino Section 8 participants, and because this decision has
20  an unjustified disproportionate impact on blacks and Latinos, the City is directly liable
21  for violation of the Fair Housing Act and other laws.

22      A municipality is liable for discrimination where "a discriminatory purpose is a
23  motivating factor in the decision" of a local legislative body.  *Arlington Heights*, 429
24  U.S. at 265-66.  Under the Fair Housing Act, "a plaintiff can establish a *prima facie*
25  case [of intentional discrimination] by showing that animus against [a] protected group
26  'was a significant factor in the position taken' by the municipal decision-makers
27  themselves or by those to whom the decision-makers were knowingly responsive."
28  *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 425 (2d Cir. 1995).  Under Ninth Circuit

precedent, the Fair Housing Act also provides for liability under a disparate impact theory where a municipality's facially neutral decision has an unjustified disproportionate impact on a protected group. *See Comm. Concerning Community Improvement*, 583 F.3d at 713. "To establish a prima facie case of disparate impact, 'a plaintiff must show at least that the defendant's actions had a discriminatory effect.'" *Id.* (quoting *Keith v. Volpe*, 858 F.2d 467, 482 (9th Cir. 1988)).[7]

As discussed in Sections VI and VII below, the FAC alleges ample evidence of Palmdale's discriminatory intent.  For example, Palmdale expressed the desire to reduce the perceived "inordinate amount" of Section 8 residents in the City.  (*See* FAC ¶¶ 7-8, 38.)  Its decisions to hire a special housing investigator and dedicate part of its Sheriff's Department personnel to rental housing were motivated by this animus against black and Latino Section 8 residents.  (*See id.*)  Moreover, Palmdale was aware of the racially disparate impact of its decisions to hire a dedicated housing investigator and direct its Sheriff's Department personnel to aggressively target Section 8 tenants.  (*See* FAC ¶¶ 42-45.)  It received detailed reports indicating the disproportionate number of opened investigations and proposed and completed terminations in the City.  (*Id.* ¶ 44.)  Further, it was aware of its investigator's illegal and unduly aggressive tactics and collusion with Sheriff's deputies through the investigator's personal reports to the City.  (*Id.* ¶ 43.)  With this knowledge, Palmdale officials not only retained the City's investigator but repeatedly increased his hours and funding.  (*Id.* ¶ 38.)  The fact that Palmdale increased its funding for the City's investigator despite this knowledge illustrates that it acted out of animus, not reasoned decision-making.  Because they were motivated by

---

[7]  The Supreme Court has granted certiorari to review the Eighth Circuit's decision in *Gallagher v. Magner*, 619 F.3d 823 (8th Cir. 2010) and determine whether disparate impact claims are cognizable under the Fair Housing Act.  *See Magner v. Gallagher*, Case No. 10-1032, 2011 WL 531692 (Nov. 7, 2011).  However, unless and until the Supreme Court modifies or rejects the disparate impact theory, this Court is bound by the well-reasoned Ninth Circuit decisions in *Comm. Concerning Community Improvement v. City of Modesto* and its predecessors.  *See, e.g., United States v. Frank*, 956 F.2d 872, 882 (9th Cir. 1992) ("In the absence of an intervening Supreme Court decision or an Act of Congress that nullifies Ninth Circuit precedent, we must adhere to the law of the circuit.").

PLAINTIFFS' OPP'N TO CITY OF PALMDALE'S MOTION TO DISMISS

discriminatory animus and had an unjustified discriminatory effect, these decisions are an independent ground for direct liability for housing discrimination, even if a jury ultimately concludes that Palmdale did not fully control the day-to-day actions of its housing investigator and Sheriff's Department personnel.

In addition, the City took action against black and Latino Section 8 participants in ways not involving housing investigators or Sheriff's deputies.  In conjunction with Lancaster, Palmdale sought to have HACoLA produce an ad campaign to dissuade Section 8 participants from moving to the Antelope Valley.  (FAC ¶ 9b.)  The City also asked HACoLA to send letters to Section 8 landlords threatening to terminate the landlords' right to Section 8 payments for non-compliance with the City's business licensing ordinance, even though the ordinance had traditionally not been enforced against rental complexes smaller than four units.  (Id. ¶ 52.)  Palmdale further used the existence of this ordinance as a pretext to obtain lists of the names and addresses of Section 8 tenants and landlords.  (Id. ¶ 53.)  Palmdale officials have also used the City's rental inspection ordinances to enter Section 8 residences and further harass tenants.  (Id. ¶ 54.)  Finally, the City sought to participate in orientation sessions for new Section 8 voucher holders in order to intimidate tenants.  (Id. ¶ 65.)

The allegations in the FAC demonstrate that Palmdale engaged in a campaign to reduce the number of Section 8 participants living in the City, and did so out of an animus against black and Latino participants.  The data in the FAC demonstrate that Palmdale's actions had a disproportionate impact on blacks and Latinos, who make up the majority of Section 8 participants.  (FAC ¶¶ 32-33.)  The FAC thus states a claim against Palmdale for direct liability for violation of fair housing and anti-discrimination laws, under both disparate treatment and disparate impact theories.[8]  Accordingly, even

---

[8]  At a minimum, Palmdale's conduct constitutes a violation of section 3617 of the FHA, which "has been broadly applied to reach all practices which have the effect of interfering with the exercise of rights under the federal fair housing laws."  See United States v. City of Hayward, 36 F.3d 832, 835 (9th Cir. 1994) (quoting Mich. Protection & Advocacy Serv. v. Babin, 18 F.3d 337, 347 (6th Cir. 1994)) (internal quotation marks omitted); accord Walker v. City of Lakewood, 272 F.3d 1114, 1129

PLAINTIFFS' OPP'N TO CITY OF PALMDALE'S MOTION TO DISMISS

if Palmdale were not vicariously liable for the acts of its agents, there would still be no basis for dismissing Plaintiffs' FAC.

## VI.    PALMDALE'S STATEMENTS ARE EVIDENCE OF INTENT TO DISCRIMINATE

Palmdale next argues that Plaintiffs' FAC should be dismissed on the grounds that various statements made by its City Council members constitute petitioning and advocacy, and petitioning and advocacy – even if done in support of an unlawful act – are protected speech.  (Mot. at 13-19.)  Palmdale is correct that the Noerr-Pennington doctrine, premised upon First Amendment freedom of speech, would bar a suit based exclusively on lobbying activity of elected officials, regardless of whether the motive or object of that lobbying activity was illegal.  *See, e.g., Manistee Town Ctr. v. City of Glendale,* 227 F.3d 1090, 1093-94 (9th Cir. 2000).  However, Plaintiffs do not seek to hold Palmdale liable for violating the fair housing laws based on Palmdale officials' speech.  Palmdale did more than advocate for discrimination.  It acted.  It is Palmdale's actions, not its words, that form the basis for Plaintiffs' claims.  Thus, Noerr-Pennington and the First Amendment do not support Palmdale's motion to dismiss.  *White v. Lee*, 227 F.3d 1214, 1228 (9th Cir. 2000) ("The mere fact that citizens urge their government to adopt measures that may be unlawful does not deprive *the speech involved* of its First Amendment protection." (emphasis added)); *see also Walker*, 272 F.3d at 1129-1130 n.5 (remanding for consideration of whether advocacy and lawsuit were protected under Noerr-Pennington, finding that for all other actions by defendant, "the doctrine does not apply and the City has no Noerr-Pennington defense").[9]

---

(9th Cir. 2001).  Further, "[s]ection 3617 does not require [the person] who is interfered with to capitulate to the interference."  *City of Hayward,* 36 F.3d at 836.

[9]  Moreover, even as to petitioning and advocacy, there are limits to the protections of the First Amendment and Noerr-Pennington.  There is a "sham" exception, which "encompasses situations in which persons use the governmental *process* – as opposed to the *outcome* of that process – as a … weapon."  *City of Columbia v. Omni Outdoor Advert., Inc.,* 499 U.S. 365, 380 (1991) (emphasis in original).  In addition, while petitioning and advocacy are protected, threats, intimidation, and coercion are not.  *White,* 227 F.3d at 1230.  Finally, as the Seventh Circuit explained, "Speech by government … cannot be equated for all purposes to speech by an individual.  It remains an official act, and when

Moreover, even though the statements quoted in the FAC do not serve as an independent basis for liability, they do support Plaintiffs' claims of intentional discrimination.   The First Amendment and Noerr-Pennington doctrine provide immunity from liability but they are not evidentiary privileges.   Palmdale officials' statements serve as evidence of Palmdale's discriminatory intent.   Indeed, the Supreme Court's decision in *Pennington* was explicit on this point, stating that protected speech "may nevertheless be introduced [into evidence] if it tends reasonably to show ***the purpose and character*** of the particular transactions under scrutiny."   *United Mine Workers v. Pennington*, 381 U.S. 657, 670 n.3 (1965) (emphasis added).   Here, the "particular transactions under scrutiny" include Palmdale's repeated entry into and renewal of MOUs with HACoLA and the County (FAC ¶¶ 37-38), its requests that HACoLA send threatening letters to Palmdale's Section 8 landlords and provide the City with lists of Section 8 participants (FAC ¶¶ 52-53), and its decisions to expand its rights to inspect rental properties and dedicate a portion of its police force to targeting them (FAC ¶¶ 35, 51).   Plaintiffs point to statements by Palmdale officials – that they fear a "swarm" of Section 8 participants (FAC ¶ 7), that the City needs to "crack down" on rampant fraud among current Section 8 participants to make way for "legitimately" "deserving" individuals (FAC ¶¶ 11, 15), that Palmdale has an "inordinate amount of Section 8 in [their] community" (FAC ¶ 38), and that its Section 8 investigator's work was "incredible" and his "unmatched" "productivity" laudable (FAC ¶ 43) – as evidence of the "purpose and character" of those actions.

Indeed, this is precisely the inquiry that the Supreme Court has prescribed when determining whether a government action was taken with discriminatory intent.   In

its purpose and tendency are, as alleged here, to promote discrimination that violates the Fourteenth Amendment, so too does the act."   *Creek v. Village of Westhaven*, 80 F.3d 186, 193-194 (7th Cir. 1996).   Although Plaintiffs do not contend that the statements by Palmdale officials cited in the FAC are independently actionable, Plaintiffs *do not* concede that *any* statement made by an agent of either Palmdale or Lancaster is subject to the protections of the First Amendment or Noerr-Pennington, and expressly reserve the right to assert that statements made by Lancaster officials, as well as other statements by agents of either city that may be identified in discovery, fall outside of these protections.

PLAINTIFFS' OPP'N TO CITY OF PALMDALE'S MOTION TO DISMISS

addition to considering the impact of the action and the historical context into which it falls, the Court has observed that "[t]he legislative or administrative history may be highly relevant, *especially where there are contemporary statements by members of the decisionmaking body*, minutes of its meetings, or reports." *Arlington Heights*, 429 U.S. at 268 (emphasis added).    The statements identified above demonstrate that Palmdale's actions were grounded in racial and ethnic animus, and that their intended effect was to harass and, ideally, drive out black and Latino Section 8 participants. *See, e.g., Reg'l Econ. Cmty. Action Program v. City of Middletown*, 294 F.3d 35, 49-51 (2d Cir. 2002) (reasonable jury could conclude that city officials' statements such as "the city is over and above has done more than we probably should have done [sic]," "this City has done more than its share," and "why do we have to have all the treatment facilities right here in Middletown?" were evidence of animus against the disabled); *Flores v. Pierce*, 617 F.2d 1386, 1390 (9th Cir. 1980) (city official's statement that the city was "a fine little town" and that government action was necessary to keep the town on "good level" was evidence of discriminatory intent in undertaking the action).[10]

In short, the First Amendment and Noerr-Pennington provide no basis for dismissing Plaintiffs' claims.    Statements by Palmdale's officials, while not independently actionable, provide compelling evidence of Palmdale's unlawful intent.[11]

---

[10]  Moreover, there can be no question that the statements identified in the FAC bear directly on Palmdale's decision making process – Palmdale has conceded as much by moving for Noerr-Pennington protection. Were these statements not made as part of the City's deliberative process, they would not constitute petitioning and advocacy and thus would not be subject to the doctrine.

[11]  Palmdale may be tempted to dispute Plaintiffs' claims regarding intent by citing to the Eighth Circuit's decision in *Gallagher v. Magner*, which, as noted above, is being reviewed by the Supreme Court on the issue of disparate impact.  The cursory analysis in *Gallagher* considered only whether intent could be found based on direct evidence – in essence, blunt statements of racial bias. 619 F.3d at 831-33.  As demonstrated by the cases cited above, this is not a complete analysis. Per the Supreme Court's decision in *Arlington Heights*, courts examine circumstantial as well as direct evidence of racial animus, including (a) the discriminatory impact of the government's actions; (b) the historical background and the sequence of events; and (c) the legislative history, including statements made by the legislative body.  *Arlington Heights*, 429 U.S. at 266-68.  The Ninth Circuit has echoed the Supreme Court's finding that "[c]ircumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103,

## VII.   **PALMDALE HAS FOLLOWED LANCASTER'S LEAD**

Finally, Palmdale argues that it is not liable for Lancaster's statements or conduct. (Mot. at 19.)  Again, Palmdale is correct that Lancaster's actions cannot serve as a basis for liability.  However, Lancaster's conduct is relevant to the claims against Palmdale, as Palmdale has chosen to emulate Lancaster in targeting Section 8 participants.  (*See* FAC ¶ 37 (Palmdale noted that Lancaster had already entered into MOU with HACoLA); ¶ 52 (after learning that HACoLA sent threatening letters to Section 8 landlords in Lancaster, Palmdale requested the same for its Section 8 landlords); ¶¶ 52-53 (Palmdale and Lancaster devised joint plan to obtain lists of Section 8 participants).) Because Palmdale has looked to Lancaster as part of its decision making process, Lancaster's blatantly discriminatory conduct, and the vitriol of its leaders, serve as evidence of Palmdale's discriminatory intent.  *See Arlington Heights*, 429 U.S. at 267 (evidence of intent includes "[t]he historical background" and "[t]he specific sequence of events" leading to a decision).  Palmdale cannot both follow Lancaster's lead and try to distance itself from Lancaster's plainly discriminatory motivations.

## VIII. **CONCLUSION**

This action seeks to bring Palmdale into compliance with our nation's fair housing laws and Constitution, and to require Palmdale to treat all residents with the dignity and respect they deserve and our laws guarantee.  For the foregoing reasons and out of deference to these critically important goals, this suit should be allowed to go forward and Palmdale's motion to dismiss should be denied in its entirety.

DATED:  December 5, 2011

/s/ Catherine E. Lhamon (with permission)

Catherine E. Lhamon
PUBLIC COUNSEL LAW CENTER
Attorneys for Plaintiffs

---

1122 (9th Cir. 2004) (quoting *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003)).  Here, the circumstantial evidence supports Plaintiffs' allegations of discriminatory intent and certainly meet the plausibility standard required at this stage of the litigation.  Moreover, Palmdale has not moved to dismiss Plaintiffs' FAC for failure to plead intent and should not be permitted to use its reply to do so.

PLAINTIFFS' OPP'N TO CITY OF PALMDALE'S MOTION TO DISMISS

/s/ Neal S. Dudovitz (with permission)
Neal S. Dudovitz
NEIGHBORHOOD LEGAL SERVICES OF
LOS ANGELES COUNTY
Attorneys for Plaintiffs

/s/ Dorcas R. Gilmore (with permission)
Dorcas R. Gilmore
NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED PEOPLE
Attorneys for Plaintiffs

/s/ Gary L. Blasi (with permission)
Gary L. Blasi
Attorney for Plaintiffs

/s/ Bill Lann Lee (with permission)
Bill Lann Lee
LEWIS, FEINBERG, LEE, RENAKER, &
JACKSON, P.C.
Attorneys for Plaintiffs

/s/ Michael C. Small
Michael C. Small
AKIN GUMP STRAUSS HAUER & FELD LLP
Attorneys for Plaintiffs

PLAINTIFFS' OPP'N TO CITY OF PALMDALE'S MOTION TO DISMISS