UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 11-4817 ODW (VBKx) | Date | 2-1-12 |
|---|---|---|---|
| Title | *The Community Action League, et al. v. City of Palmdale, et al.* | | |

Present: The Honorable Otis D. Wright II, United States District Judge

| Sheila English | Not Present | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

Attorneys Present for Plaintiff(s):      Attorneys Present for Defendant(s):

Not Present      Not Present

**Proceedings (In Chambers):**    **Order Denying Motions to Dismiss [36, 37]**

The Community Action League and the California State Conference of the National Association for the Advancement of Colored People ("Plaintiffs") bring this civil rights action against the City of Lancaster and the City of Palmdale to halt alleged systematic discrimination against low-income black and Latino families who choose to live in these cities using Section 8 rental subsidies. Defendants now separately move to dismiss.

*Factual Background*

The Section 8 Housing Choice Voucher program, commonly referred to as "Section 8," is a federal program funded and administered by the U.S. Department of Housing and Urban Development ("HUD"), which provides rental subsidies for low income families and individuals. HUD often delegates administration of Section 8 to a local housing authority. "In most of Los Angeles County, including Lancaster and Palmdale, the local housing authority is the Housing Authority of the County of Los Angeles ("HACLA")." (FAC ¶ 3.)

Lower housing costs have made Lancaster and Palmdale attractive for Section 8 participants. "For example, a recent review of rental listings accepting Section 8 vouchers shows that the same $1,100/month voucher that can be used to obtain a two-bedroom, one-bath apartment in Alhambra, Covina, or Inglewood, can be used to rent a three-bedroom, two-bath single-family house in Palmdale or Lancaster." (Id. ¶ 5.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-4817 ODW (VBKx) | Date | 2/1/2012 |
|---|---|---|---|
| Title | *The Community Action League, et al. v. City of Palmdale, et al.* | | |

"Approximately 3,600 primarily black and Latino families (or 11,400 individuals) with Section 8 vouchers have chosen to live in Lancaster or Palmdale." (FAC ¶ 6.) Plaintiffs allege Defendant cities did not welcome these Section 8 families. "Rather, City officials have treated Section 8 participants as outsiders who have been imposed or, as one Lancaster official put it, 'dumped' upon Lancaster and Palmdale. . . . Thus, the Cities have targeted these black and Latino Section 8 voucher holders . . . with punitive surveillance and harassment." (Id. ¶ 7) ("Moreover, the Cities have sought to exclude Section 8 voucher holders currently living elsewhere by discouraging them from moving into the Cities.").

Among other things, Plaintiffs allege both Lancaster and Palmdale

> entered into annual agreements with HACLA and the County of Los Angeles to pay for targeting Section 8 participants for markedly greater levels of investigations [Memoranda of Understanding] ("MOUs"). For example, according to data provided to the Cities on a monthly basis, between July 2008 and June 2009, approximately 1 in 12 Palmdale Section 8 tenants and 1 in 21 Lancaster Section 8 tenants had their vouchers terminated for purported fraud or some other program violation. In the rest of HACLA's jurisdiction, the rate during the same period was roughly 1 in 114. The Cities have renewed and expanded these agreements to increase the hours or number of investigators several times since their inception. In turn, these investigators have engaged in disproportionate and extraordinarily aggressive tactics, including: mounting intimidating multi-agency Section 8 'sweeps;' unnecessarily enlisting armed deputies to join investigators when performing 'compliance checks;' and recommending far more program terminations than their colleagues in other parts of the County – many of which are patently unfounded.

(FAC ¶ 9a.)

As a consequence, the only Section 8 participants who are safe from Defendants' alleged campaign are those Section 8 participants "who are elderly or have disabilities, and who are less likely to be black or Latino. City officials have treated these individuals as 'deserving' Section 8 assistance and spared them from attack." (FAC ¶ 8.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 11-4817 ODW (VBKx) | Date | 2/1/2012 |
|---|---|---|---|
| Title | *The Community Action League, et al. v. City of Palmdale, et al.* | | |

### *Legal Standard*

While a complaint attacked by a motion to dismiss does not need detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (courts need not "accept as true a legal conclusion couched as a factual allegation"). Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (internal quotation marks omitted).

"The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citation and quotation marks omitted). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

### *City of Lancaster's Motion* (Docket No. 36)

Lancaster moves to dismiss Plaintiffs' FAC on two fronts, first arguing that no Plaintiff has standing in this action and, then, that Plaintiffs fail to state a claim against Lancaster for HACLA's allegedly discriminatory actions.

Lancaster first attacks the individual and organizational Plaintiffs' pleading of standing at each stage of the inquiry. (*See* Mot. at 6-12) (arguing that Plaintiffs have not properly alleged concrete injury, caused by Lancaster, which may be redressed by a favorable judgment). While the Court finds Lancaster's tactic inconsequential, it does warrant brief comment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 11-4817 ODW (VBKx) | Date | 2/1/2012 |
| Title | *The Community Action League, et al. v. City of Palmdale, et al.* | | |

### *Standing*

#### Injury

First, as Plaintiffs point out, non-economic injury can support standing to sue under the Fair Housing Act. *See Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 208 (1972); *see also Inland Mediation Bd. v. City of Pomona*, 158 F. Supp. 2d 1120, 1138 (C.D. Cal. 2001). Indeed, the mere "stigmatization" which results from being labeled as a member of an inferior class of citizens has repeatedly been held sufficient to confer standing. *Id.*; *see also Trafficante*, 409 U.S. 205 (tenants who alleged that building owner's discriminatory policies "stigmatized" them as residents of a "white ghetto" stated sufficient actual injury).

Accordingly, Plaintiffs here have alleged injury in fact, consisting of stigmatization, harassment and exclusionary policies. For example, like the plaintiff in *Inland Mediation Bd.*, who "became so emotionally distraught that she felt forced to . . . move away from Pomona, suffering . . . non-economic injury as a result" 158 F. Supp. 2d at 1138, Plaintiff Sheila Williams also felt forced to move away from Lancaster. (*See* FAC ¶¶ 78-79.)[1]

#### Causation

Challenging causation, Lancaster next argues, if Plaintiffs "were injured by HACLA's compliance checks, HACLA–not Lancaster–is responsible for such injury." (Mot. at 9.) But Lancaster's argument ignores the agreements underlying HACLA's alleged violations (the MOUs), pursuant to which Lancaster may be held vicariously liable. Lancaster also fails to consider its alleged direct liability, arising from an assortment of discriminatory practices by the City of Lancaster. (*See* Opp'n at 17-18.)

---

[1] The organizational Plaintiffs have also established their standing to sue. (*See* Opp'n at 10-13.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-4817 ODW (VBKx) | Date | 2/1/2012 |
|---|---|---|---|
| Title | *The Community Action League, et al. v. City of Palmdale, et al.* | | |

Redressability

Lancaster's argument here is derivative of its position on causation; to wit, Lancaster did not cause the alleged harm (HACLA did) and, accordingly, a judgment against Lancaster would not remedy the situation created by HACLA. The Court disagrees.

Based on Plaintiffs' allegations, it is Lancaster that is the driving force behind the claimed discrimination, not HACLA. Indeed, Plaintiffs allege no such discrimination in other Section 8 locales within HACLA's jurisdiction. In short, the Court is satisfied that appropriate relief, if warranted, may be fashioned to redress Plaintiffs' harm. The Court thus finds that Plaintiffs have standing to prosecute this action.

### *Plaintiffs' Claims*

Lancaster next attacks Plaintiffs' several claims, pointing out perceived pleading deficiencies in the operative complaint. Again, while the Court will not attempt to address Lancaster's every argument, a few bear discussion.

*Vicarious Liability*

Lancaster first contends Plaintiffs fail to properly state any claim "because each is based solely on actions allegedly taken by HACLA . . . not Lancaster." (Mot. at 14) (Plaintiffs fail to properly plead vicarious liability because "the FAC does not contain any of the following factual allegations" necessary to impose vicarious liability: "(I) that Lancaster manifested assent to HACLA that HACLA shall act on Lancaster's behalf . . . and (ii) that HACLA manifested assent or otherwise so consented to act."). The Court disagrees.

Lancaster again ignores its agreements with HACLA (the MOUs), which by definition, evidence mutual assent. And, while these agreements do not necessarily evidence the claimed harassment, they sufficiently state the predicates for vicarious liability, especially at the pleading stage. As for Lancaster's rigid articulation of the pleading requirement, it not only runs counter to the notice pleading standard, but also works to strip the Court of all ability to draw reasonable inferences.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-4817 ODW (VBKx) | Date | 2/1/2012 |
|---|---|---|---|
| Title | *The Community Action League, et al. v. City of Palmdale, et al.* | | |

Lancaster's argument also fails to consider its direct liability, allegedly arising from an assortment of discriminatory practices by the City of Lancaster. (*See* Opp'n at 17-18) (detailing Lancaster's own discriminatory LAN-CAP and CORE programs, nuisance ordinance, discriminatory licensing and a Section 8 Commission).

*Sufficiency of Plaintiffs' Claims*

<u>42 U.S.C. § 3604(a)</u>

Plaintiffs' first claim alleges that Lancaster violated Section 3604(a) of Title 42 of the United States Code, which makes it unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." Lancaster argues this claim fails because "the allegations [ ] set forth in the FAC show that Lancaster has not made housing unavailable to the Plaintiffs because (I) [Plaintiff] Williams relocated from Lancaster on a voluntary basis after HACLA . . .conducted a single compliance check and (ii) [Plaintiffs] Ross and Davis currently live in Lancaster." (Mot at 15.) While the simplicity of this lose-lose proposition is certainly intriguing, the Court cannot sustain Lancaster's argument.

As the Ninth Circuit recognizes, "there is an enforceable right under the FHA to live in a building, town or neighborhood that is free of housing discrimination." *Harris v. Itzhaki*, 183 F.3d 1043, 1053 n.4 (9th Cir. 1999). And, as Plaintiffs' FAC details, Lancaster is allegedly rife with housing discrimination. Plaintiffs here similarly retain the right to live in a neighborhood free of housing discrimination. "Neither their choice to remain and fight [ ] nor a decision to leave Lancaster to protect against further harassment and potential homelessness insulates Lancaster from liability under Section 3604(a)." (Opp'n at 20.)

Lancaster's argument also completely "ignores that its actions have injured the organizational Plaintiffs by discouraging members of the communities they serve from staying in or seeking rental housing in Lancaster." (Id.) In short, Plaintiffs sufficiently state a claim against Lancaster under 42 U.S.C. § 3604(a).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-4817 ODW (VBKx) | Date | 2/1/2012 |
|---|---|---|---|
| Title | *The Community Action League, et al. v. City of Palmdale, et al.* | | |

<u>42 U.S.C. § 3604(b)</u>

Section 3604(b) makes it "unlawful ... [t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color . . . or national origin." Lancaster contends that Section 3604(b) is inapplicable because the City does not engage in the "sale or rental" of housing. (Mot. at 15). But, as Plaintiffs argue, "Lancaster misapprehends the statute." (Opp'n at 20.)

Section 3604(b) is not limited to those who are engaged in the "sale or rental" of dwellings. It applies more broadly, covering post-acquisition or post-rental discrimination in the provision of housing services, and matters that are connected to, but not a part of the sale or rental transaction. (Id.) (citing *Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 713 (9th Cir. 2009)).

According to the complaint, Lancaster has engaged in discrimination against Section 8 participants who already have rented dwellings in the City by providing racially distinct housing services – encompassing everything from the MOU-based surveillance and harassment of Section 8 participants to the business and licensing ordinances that disfavor Section 8 landlords and their tenants. (Opp'n at 20-21.) Such allegations sufficiently implicate the FHA. *See, e.g., Waterhouse v. City of American Canyon*, 2011 WL 2197977 *5 (N.D. Cal. 2011) ("[T]his order holds that the City's actions in enacting and enforcing the ordinances violate the Fair Housing Act by 'mak[ing] unavailable . . . dwelling[s] to any person because of [race, color] . . . familial status,' 42 U.S.C. 3604(a); by 'discriminat[ing] against any person in the terms, conditions, or privileges of sale or rental of a dwelling ... because of [race, color] . . . familial status,' 42 U.S.C. 3604(b); and by 'interfer[ing] with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, ... any right granted or protected by section 3603, 3604, 3605, or 3606 of this title,' 42 U.S.C. 3617."). Lancaster's motion to dismiss this claim is therefore DENIED.[2]

---

[2] Plaintiffs have alleged facts sufficient to raise the reasonable inference that Lancaster's alleged discrimination against Section 8 tenants is in fact thinly-veiled racial discrimination.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-4817 ODW (VBKx) | Date | 2/1/2012 |
|---|---|---|---|
| Title | *The Community Action League, et al. v. City of Palmdale, et al.* | | |

*Remaining Claims*

Plaintiffs' third claim alleges that Lancaster violated Section 3617 of Title 42 of the United States Code, which makes it unlawful to "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account o his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 803, 804, 805, or 806 [42 U.S.C. §§ 3603, 3604, 3605, or 3606]." Plaintiffs' fifth claim alleges that Lancaster violated Section 12955(k) of the California Government Code, which makes it unlawful to "otherwise make unavailable or deny a dwelling based on discrimination because of race, color, religion, sex, sexual orientation, familial status, source of income, disability, or national origin." The sixth claim under attack alleges that Lancaster violated Section 11135 of the California Government Code, which provides that "[n]o person in the State of California shall, on the basis of race, national origin . . . be unlawfully denied full and equal access to the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is conducted, operated, or administered by the state or by any state agency, is funded directly by the state, or receives any financial assistance from the state."

In its moving papers, Lancaster argues, in conclusory fashion, and without supporting citations, that these claims fail because "the allegations as set forth in the FAC fail to show that Lancaster has coerced [third claim] . . . made housing unavailable [fifth claim]. . . [or] has denied the Plaintiffs full and equal access to any benefits of . . . the state [sixth claim]." (Mot at 16.) As to the third claim, Lancaster's bare attacks fail because the FAC is in fact rife with "allegations of race-based coercion, intimidation, threats, and interference . . ." (Opp'n at 21.) As to the fifth claim, Lancaster again contends "the allegations as set forth in the FAC show that Lancaster has not made housing unavailable to the Plaintiffs because (I) Williams relocated from Lancaster on a voluntary basis after HACLA-not Lancaster-conducted a single compliance check [ ] and (ii) Ross and Davis currently live in Lancaster." (Opp'n at 16.) As mentioned above, this lose-lose proposition is unavailing. The sixth claim also survives Lancaster's motion to dismiss. Plaintiffs allege Lancaster receives "state financial assistance" and that it has undertaken a series of actions expressly designed to exclude and discriminate against Section 8 participants on the basis of race. Such is sufficient to survive this motion to dismiss. (*See* Opp'n at 21) (citation omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 11-4817 ODW (VBKx) | Date | 2/1/2012 |
| Title | *The Community Action League, et al. v. City of Palmdale, et al.* | | |

### *Discriminatory Intent and Effect*

Arguing Plaintiffs fail to demonstrate either discriminatory intent or disparate impact, Lancaster explains that a "prima facie case of racial discrimination as alleged in the FHA Claims . . . may be established by . . . demonstrating either discriminatory intent or disparate impact." (Mot. at 17) (citing *Pfaff v. United States HUD*, 88 F.3d 739 (9th Cir. 1996); *Sisemore v. Master Financial, Inc.*, 151 Cal. App. 4th 1386 (2007)). As Plaintiffs add, "courts examine 'circumstantial and direct evidence' of racial animus; the sources of this proof include (a) the discriminatory impact of the government's actions; (b) the historical background and the sequence of events; and © the legislative history, including statements made by the legislative body. . . . *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004) ("'Circumstantial evidence [of discrimination] is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence.'") (quoting *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99 (2003))."

As to the discriminatory impact factor, Plaintiffs argue "Lancaster's policies and practices have disproportionately affected black and Latino Section 8 participants." (Opp'n at 22) ("According to the most recent HUD statistics, 84% of Section 8 participants in Lancaster are black and Latino. . . . Lancaster has targeted families, not elderly or disabled Section 8 participants who live in Lancaster and are more likely to be white. . . . Lancaster knew full well that its policies and practices would have a racially discriminatory effect because *HUD told the City as much*. (FAC ¶ 7) (emphasis added). The individual Plaintiffs, including those who felt forced out of Lancaster and those still there under the threat of future discrimination, also demonstrate the discriminatory impact of Lancaster's alleged discrimination.

As to the background and sequence of events, Lancaster "was the site of intense racial segregation well into the 1970s." (Mot. at 22) (citing FAC ¶ 29.) "Over the past decade, as more and more black and Latino families in the Section 8 program have chosen to live in or looked to relocate to Lancaster because of its relatively affordable housing opportunities, the City responded with policies and practices that replicated its past segregationist bent: it sought to rid the City of black and Latino families in the Section 8 program who had arrived and stop still others from moving there. (Id.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-4817 ODW (VBKx) | Date | 2/1/2012 |
|---|---|---|---|
| Title | *The Community Action League, et al. v. City of Palmdale, et al.* | | |

Finally, Lancaster's own statements are also telling. As Plaintiffs point out, "[t]he City's mayor has proudly and repeatedly stated that Lancaster is at 'war' with Section 8 (FAC ¶¶ 8, 16), and that 'the Section 8 issue needs to be dealt with on a local more aggressive manner rather than becoming a dumping ground for . . . Section 8 [participants].' (Id. ¶ 58.) City officials explicitly set a goal of reducing Section 8 households in Lancaster by fifty percent. They also boasted of the use of the City's business licensing ordinance as 'a backdoor way of controlling how many vouchers are coming into the City.'" (Id. ¶ 56.)

Although not overtly racist, such sentiments evidence discriminatory intent. "[C]ourts have long held that thinly-veiled statements of prejudice, like Lancaster's, are compelling evidence of discriminatory intent. *See, e.g., Reg'l Econ. Cmty. Action Program v. City of Middletown*, 294 F.3d 35, 49-51 (2d Cir. 2002) (city officials' statements that "the city[] over and above has done more than we probably should have done," "this City has done more than its share," and "why do we have to have all the treatment facilities right here in Middletown?" were evidence of animus against the disabled)." (Opp'n at 23.)

Suffice it to say, Lancaster's motion to dismiss is **DENIED**. Lancaster's motion to strike paragraphs 29 through 31 of the FAC-detailing incidents of racial discrimination in Lancaster from the 1970s to the present day-is also **DENIED**. Such historical background is not only relevant but arguably necessary. *See McGinest*, 360 F.3d at 1122.

### *City of Plamdale's Motion* (Docket No. 37)

<u>HACLA and Sheriff's Department Are Not Indispensable Parties</u>

Taking a slightly different approach, Palmdale first argues the FAC must be dismissed because it fails to join two indispensable parties, HACLA and the Sheriff's Department ("LACSD"). As Palmdale points out, Federal Rule of Civil Procedure 19(a) provides in pertinent part:

> (1) A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and . . .

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-4817 ODW (VBKx) | Date | 2/1/2012 |
|---|---|---|---|
| Title | *The Community Action League, et al. v. City of Palmdale, et al.* | | |

As to Rule 19(a)(1)(A), Palmdale argues "complete relief from the wrongs allegedly being inflicted on plaintiffs and those on whose behalf they claim to litigate cannot be afforded unless HACLA and LACSD are subject to the injunctions sought by plaintiffs against Palmdale and Lancaster." (Mot at 7.) Plaintiffs disagree, arguing "[a]lthough Plaintiffs reserve the right to seek such relief elsewhere, the operative FAC does not seek injunctive relief enjoining HACLA or LACSD, nor does it seek relief that cannot be accomplished without their cooperation." (Opp'n at 9) ("Rather, complete relief in this case means injunctive relief requiring Palmdale to remedy the discriminatory practices identified in the FAC to the extent those practices are within Palmdale's control.").

The Court agrees with Plaintiffs. While some of the alleged discrimination involves the actions of a HACLA investigator partially funded by Palmdale and Sheriff deputies accompanying the investigator, Palmdale is alleged to have discriminated in ways that do not involve either entity. (*See* Opp'n at 9-10.) In any event, as alleged, "the housing investigator[] and law enforcement['s] actions targeting Section 8 participants occur only with the funding and support of the City." (Id. at 10.) And, the Court is confident that injunctive relief may be afforded here, requiring Palmdale to remedy the discriminatory practices to the extent those practices are within Palmdale's control. *See, e.g., Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861 (9th Cir. 2004).

Palmdale's arguments with respect to Rule 19(a)(1)(B) fail to recognize an essential, and here determinative, prerequisite. Namely, this Rule requires the *allegedly indispensable "person* [to] claim[] an interest relating to the subject of the action . . . ." *Id. (emphasis added); see also FDIC v. County of Orange (In re County of Orange)*, 262 F.3d 1014, 1023 (9th Cir. 2001) ("[Defendant] cannot claim that the [absent parties] have a legally-protected interest in the action unless the [absent parties] themselves claim that they have such an interest."). Here, although aware of this litigation (*see* Opp'n at 11), neither HACLA nor LACSD claimed any such interest.

In short, Palmdale has not met its burden of showing that either HACLA or LACSD is indispensable. *See Altmann v. Republic of Aus.*, 317 F.3d 954, 971 (9th Cir. 2002) ("Where a party is aware of an action and chooses not to claim an interest, the district court does not err by holding that joinder [is] 'unnecessary.'") (citation omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 11-4817 ODW (VBKx) | Date | 2/1/2012 |
|---|---|---|---|
| Title | *The Community Action League, et al. v. City of Palmdale, et al.* | | |

### *Vicarious Liability*

Palmdale next argues the FAC should be dismissed because Palmdale cannot be held vicariously liable for the actions of either the housing investigator it partially funded to investigate Section 8 participants or the Sheriff's deputies accompanying that investigator. (Mot. at 10-13.) At this pleading stage, the following response from Plaintiffs suffices:

> [A]s Palmdale acknowledges, the Fair Housing Act allows liability under a theory of vicarious liability or respondeat superior. *See Meyer v. Holley*, 537 U.S. 280, 285 (2003). Based on the facts set forth in the FAC, Palmdale is vicariously liable for the actions of its investigator and its Sheriff's Department personnel. Further, Palmdale's liability for discrimination against black and Latino Section 8 participants is not based solely on a vicarious liability theory. Even if it were not vicariously liable, Palmdale is directly liable for taking actions targeting black and Latino Section 8 participants based on racial animus, which also have an unjustified disproportionate impact on black and Latino residents. Thus, Palmdale's arguments provide no grounds for dismissal.

(Opp'n at 14; *see also* id. 14-22.)

### *Palmdale's Allegedly Protected Speech*

Palmdale finally argues it "should not be held liable for alleged statements by elected officials that are protected by the First Amendment, parallel state constitutional provisions, and the Noer-Pennington doctrine." (Mot at 13.) Palmdale is correct that the Noerr-Pennington doctrine, premised upon First Amendment freedom of speech, would bar a suit based exclusively on lobbying activity of elected officials, regardless of whether the motive or object of that lobbying activity was illegal. (Opp'n at 22) (citing *Manistee Town Ctr. v. City of Glendale*, 227 F.3d 1090, 1093-94 (9th Cir. 2000)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 11-4817 ODW (VBKx) | Date | 2/1/2012 |
|---|---|---|---|
| Title | *The Community Action League, et al. v. City of Palmdale, et al.* | | |

"However, Plaintiffs do not seek to hold Palmdale liable for violating the fair housing laws based on Palmdale officials' speech. Palmdale did more than advocate for discrimination. It acted. It is Palmdale's actions, not its words, that form the basis for Plaintiffs' claims. Thus, Noerr-Pennington and the First Amendment do not support Palmdale's motion to dismiss." (Opp'n at 22.) And, as Plaintiffs add, "[the First Amendment and Noerr-Pennington doctrine provide immunity from liability but they are not evidentiary privileges. (Id. at 23) ("Indeed, the Supreme Court's decision in *Pennington* was explicit on this point, stating that protected speech 'may nevertheless be introduced [into evidence] if it tends reasonably to show **the purpose and character** of the particular transactions under scrutiny.'") (citing *United Mine Workers v. Pennington*, 381 U.S. 657, 670 n.3 (1965)) (emphasis added).

Here, the "particular transactions under scrutiny" include Palmdale's repeated entry into and renewal of the MOUs with HACLA and the County (FAC ¶¶ 37-38), its requests that HACLA send threatening letters to Palmdale's Section 8 landlords and provide the City with lists of Section 8 participants (FAC ¶¶ 52-53), and its decisions to expand its rights to inspect rental properties and dedicate a portion of its police force to targeting them (FAC ¶¶ 35, 51). Plaintiffs point to statements by Palmdale officials – that they fear a "swarm" of Section 8 participants (FAC ¶ 7), that the City needs to "crack down" on rampant fraud among current Section 8 participants to make way for "legitimately" "deserving" individuals (FAC ¶¶ 11, 15), that Palmdale has an "inordinate amount of Section 8 in [their] community" (FAC ¶ 38), and that its Section 8 investigator's work was "incredible" and his "unmatched" "productivity" laudable (FAC ¶ 43) – as evidence of the "purpose and character" of those actions. (Id.)

As the Supreme Court noted, "[t]he legislative or administrative history may be highly relevant, especially where there are contemporary statements by members of the decisionmaking body, minutes of its meetings, or reports." *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 268 (1977). In light of the foregoing, Palmdale should rest assured that its liability will not be premised on either the bare statements of its officials or Lancaster's conduct. (*See* Mot. at 19.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-4817 ODW (VBKx) | Date | 2/1/2012 |
|---|---|---|---|
| Title | *The Community Action League, et al. v. City of Palmdale, et al.* | | |

*Conclusion*

For the reasons discussed above, Lancaster and Palmdale's motions to dismiss are **DENIED.**

**SO ORDERED**

                                                         ----  :   00
                                        Initials of Preparer    SE